UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

In re:

DREW NOMELLINI,

    Debtor.

_____

DREW NOMELLINI,

    Appellant,

  v.

UNITED STATES OF AMERICA
INTERNAL REVENUE SERVICE,

    Appellee.

Case No. 5:15-cv-04122-EJD

**ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

In this bankruptcy appeal, chapter 13 debtor Drew Nomellini ("Debtor") seeks a determination of the Internal Revenue Service's ("IRS") interest, if any, in the proceeds of the sale of Debtor's real property located at 520 St. Claire Drive, Palo Alto, California (the "Real Property"). The appeal presents a single issue: whether the Bankruptcy Court correctly determined that confirmation of the Debtor's chapter 13 plan, either originally or as modified, did

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

1 not strip or otherwise modify the *in rem* rights of the IRS arising from a pre-petition tax lien recorded against the debtor's Real Property. This Court affirms the Bankruptcy Court's determination.

## II. BACKGROUND

After Debtor, a construction contractor, failed to pay federal income taxes for tax years 2003 through 2006, the IRS filed a notice of Federal Tax Lien ("NFTL") with Santa Clara County, California. The NFTL gave notice of a statutory lien in favor of the United States against Debtor's real and personal property to secure payment of Debtor's unpaid tax liability, then totaling $173,851.62. The IRS also recorded the NFTL against the Real Property.

In December of 2011, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code. Debtor's schedules listed his Real Property as an asset valued at $950,000, as well as personal property with an aggregate value of $10,000. On Schedule D, Debtor listed four creditors with secured claims: Wachovia Bank with a first mortgage secured by the Real Property in the approximate amount of $980,190; the IRS with a claim of approximately $214,000; and judgment lien creditors, Midland Funding LLC ("Midland") and American Express Bank FSB ("AmEx") holding claims of approximately $4,900 and $9,485, respectively. The mortgage amount exceeded the value of the Real Property, and thus the Real Property was "underwater," even without taking into account the IRS lien.

In his initial petition, Debtor proposed to pay Wachovia more than $28,000 in pre-petition mortgage arrears as a secured claim to be paid through the plan and to make his on-going mortgage payments to Wachovia. The plan provided that Debtor would value and avoid the Midland and AmEx judgment liens encumbering his Real Property, and as a result, that he would pay those claims as general unsecured claims. This initial plan identified IRS as the holder of a secured claim, but did not explicitly refer to the IRS lien, nor provide any information regarding the amount of the IRS claim or the value of any collateral securing it.

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

2

In January of 2012, the IRS objected to confirmation of the plan and filed a proof of claim in the amount of $214,520.27. The IRS proof of claim listed $10,000 as a secured claim and $204,520.27 as an unsecured claim. The IRS's valuation of the secured claim was based on the value of Debtor's scheduled personal property because the Debtor's schedules indicated that there was no equity in the Real Property. Memorandum Decision of Bankruptcy Court dated June 25, 2015, p.2.

Debtor amended his proposed plan twice. The Second Amended Plan ("Plan"), filed January 18, 2012, made no changes to the proposed treatment of Wachovia, Midland and AmEx. In paragraph 2(b), the Plan listed the IRS as a creditor with an allowed secured claim with collateral valued at $10,000. The Plan provided:

> The valuations shown above will be binding unless a timely objection to confirmation is filed. Secured claims will be allowed for the value of the collateral or the amount of the claim, whichever is less. . . . The remainder of the amount owing, if any, will be allowed as a general unsecured claim paid under the provisions ¶2(d).

See Trustee's Supplemental Appendix, Tab 34. With respect to the remaining creditors, the Plan specifically noted that "debtor will value the judgment liens of American Express Bank/Legal Recovery Law Offices, Inc. and Midland Funding/Hunt & Henriques and avoid these liens. Any claim will be paid pursuant to section 2d." Id. In contrast, the Plan made no mention of the IRS lien or that the lien would be avoided. The Plan provided that the Real Property would re-vest in Debtor upon discharge or dismissal of the bankruptcy.

Approximately one month later, Debtor filed motions to value and avoid the Midland and AmEx liens against the Real Property. Debtor never filed a similar motion to value and avoid the IRS lien against the Real Property.

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM
DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

3

On February 29, 2012, the Bankruptcy Court confirmed Debtor's Plan. On March 27, 2012, the Bankruptcy Court entered orders granting Debtor's motions to value and avoid the Midland and AmEx liens.

Approximately two years later, in April of 2014, Debtor filed an amended Schedule C that listed the value of the Real Property as $950,000, as well as a motion to modify the Plan to allow for the sale of the Real Property. In May of 2014, Debtor filed an application to employ a real estate broker, which included a listing agreement stating that the listing price would be $1,800,000. Docket No. 3-1, p. 2.[1] Debtor also filed a second amended motion to modify the Plan, which was granted. Among other things, the Plan, as modified, provided for the Real Property to be sold within eight months from the date of approval, and for estate property to re-vest in Debtor upon plan confirmation. The motion made no mention of the IRS lien.

In late May of 2014, Debtor filed an amended Schedule C that continued to list the Real Property as valued at $950,000, even though Debtor's application to employ a real estate broker proposed listing the Real Property at $1,800,000. Appellant's Appendix, Tab 20, p. 169. On June 19, 2014, Debtor filed a motion to sell the Real Property for $2,175,000 free and clear of all liens, of which $1,039,919.84 was to be disbursed to Debtor.[2] A few days later, the IRS filed an amended proof of claim and listed $214,552.06 in secured claims based upon its earlier filed pre-petition lien. Debtor filed an objection to the amended proof of claim, contending that the value of the IRS claim had been determined to be $10,000 when the Bankruptcy Court confirmed the Plan.

Thereafter, the parties agreed to proceed with the sale of the Real Property free and clear of the IRS lien with the lien to attach to the sale proceeds. The stipulation further provided that the IRS would submit a demand into escrow for the amount the IRS believed was owing and that Debtor's counsel would receive from escrow and hold an amount equal to 120% of the IRS

---

[1] The application and listing agreement were e-filed, but not served on any party by mail.
[2] This appears to be the first notice given to the IRS of the substantial increase in the value of the Real Property.

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

4

1 escrow demand pending further agreement of the parties or a court determination regarding the

2 validity and amount of the IRS lien. The Bankruptcy Court authorized the sale of the Real

3 Property and the sale closed.

4 The Debtor filed the instant adversary proceeding seeking a determination regarding the extent, validity and priority of the IRS lien. Debtor contends that the Plan precludes the IRS from recovering more than the $10,000 secured claim listed in the Plan. The IRS filed a motion to dismiss the action for failure to state a claim, asserting that the IRS lien remained in full force and that the IRS is entitled to payment from the proceeds of the sale of the Real Property in the amount set forth in the IRS's amended proof of claim. Debtor filed a motion for summary judgment and opposition to the IRS's motion to dismiss. The Trustee also participated in the adversary proceedings, asserting that Debtor had never stripped the IRS lien from the Real Property and that the full extent of the IRS lien attached to the proceeds from the sale of the Real Property.

In a thorough and well-reasoned opinion, the Bankruptcy Court granted the IRS's motion to dismiss the Debtor's complaint and denied the Debtor's motion for summary judgment. Relying primarily upon the Ninth Circuit's decision in In re Brawders, 503 F.3d 856 (9th Cir. 2007), the Bankruptcy Court held that "confirmation of Debtor's Plan did not modify the IRS *in rem* lien rights when no notice was given that the value of the Property had substantially increased or that Debtor intended to avoid the balance of the IRS's statutory lien." Memorandum Decision of Bankruptcy Court dated June 25, 2015, p.6. The Bankruptcy Court reasoned: "[b]ecause Debtor has never stripped or modified the IRS lien against the Property, either by motion or through his plan, under controlling Ninth Circuit authority, the IRS's lien was not affected by plan confirmation, and the IRS had a valid lien against the [Real Property] at the time of sale. That lien was enforceable to the full extent of the underlying unpaid tax assessment and should be paid from the proceeds of the sale being held by the Trustee." Memorandum Decision of Bankruptcy Court dated June 25, 2015, p.13.

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

5

### III. STANDARDS OF REVIEW

The Bankruptcy Court's determination regarding the effect of a chapter 13 plan is subject to de novo review. Brawders, 503 F.3d at 866, citing George v. Morro Bay (In re George), 318 B.R. 729, 732-33 (9th Cir BAP 2004); Wells Fargo Bank v. Yett (In re Yett), 306 B.R. 287, 290 (9th Cir. BAP 2004). Interpretation of the terms of a chapter 13 plan is generally a factual issue reviewed for clear error, but may become mixed with legal issues. Id. Whether a chapter 13 plan is ambiguous is a matter of law subject to de novo review. Id. In this case, the Court need not decide whether the clear error or de novo standard of review applies to Debtor's chapter 13 Plan because application of either standard leads to the same result. Whether adequate notice has been given to a creditor for purposes of due process is a mixed question of law and fact that is subject to de novo review. See Brawders, supra.

### IV. DISCUSSION

Like the Bankruptcy Court, this Court finds that the principles set forth by the Ninth Circuit in Brawders, supra, control the outcome of this appeal. In Brawders, the Ninth Circuit affirmed the decision of the Bankruptcy Appellate Panel ("BAP") holding that confirmation of a chapter 13 plan did not alter the County of Ventura's lien rights to recover pre-petition taxes that remained unpaid. The Ninth Circuit adopted as its own the BAP's opinion, which sets forth several principles directly applicable to the instant appeal.

First, as a general matter, pursuant to 11 U.S.C. §1327, the provisions of a confirmed plan bind the debtor and each creditor. Further, principles of res judicata and finality can make even an "illegal" provision of a chapter 13 plan binding. In re Brawders, 503 F.3d at 867. A debtor relying upon the res judicata effect of a bankruptcy plan, however, "has the burden of proof on all elements and bears the risk of non-persuasion." Id., quoting Educ. Credit Mgmt. Corp. v. Repp (In re Repp), 307 B.R. 144, 148, n. 3 (9th Cir. BAP 2004) (citations omitted).

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM
DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

6

Next, a bankruptcy plan "should clearly state its intended effect on a given issue. Where it fails to do so it may have no res judicata effect for a variety of reasons: any ambiguity is interpreted against the debtor, any ambiguity may also reflect that the court that originally confirmed the plan did not make any final determination of the matter at issue, and claim preclusion generally does not apply to a 'claim' that was not within the parties' expectations of what was being litigated, nor where it would be plainly inconsistent with the fair and equitable implementation of a statutory or constitutional scheme." In re Brawders, 503 F.3d at 867.

Further, the principle of res judicata "should be invoked only after careful inquiry" and where consistent with due process. Enewally v. Wash. Mutual Bank (In re Enewally) Enewally v. Wash. Mutual Bank (In re Enewally), 368 F.3d 1165, 1173 (9th Cir.), cert. denied, 543 U.S. 1021 (2004). A confirmed plan "has no preclusive effect on issues that must be brought by an adversary proceeding, or were not sufficiently evidenced in a plan to provide adequate notice to the creditor." Id. These limitations on the application of res judicata "are particularly apropos when secured claims are involved" because "liens ordinarily pass through bankruptcy unaffected, regardless whether the creditor holding the lien ignores the bankruptcy case, or files an unsecured claim when it meant to file a secured claim, or files an untimely claim after the bar date has passed." In re Brawders, 503 F.3d at 867, citing, Bisch v. United States (In re Bisch), 159 B.R. 546, 550 (B.A.P. 9th Cir. 1993) (federal tax lien on real property remained valid even though the IRS had filed an unsecured proof of claim in the debtors' chapter 13 case); see also, In re Warner, 146 B.R. 253 (N.D. Cal. 1992) (in general, liens, including federal tax liens, pass through bankruptcy unaffected). Constitutionally adequate notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." U.S. Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 272 (2010); see also In re Chagolla, 544 B.R. 676, 682 (9th Cir. BAP 2016), quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 314 (1950).

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM
DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

7

In <u>Brawders</u>, the BAP (and the Ninth Circuit) applied the principles set forth above and held that the confirmed plan only affected Ventura County's claim against the bankruptcy estate, and not the amount of the underlying assessment debt or Ventura County's <u>in rem</u> rights. The BAP reviewed the language of the debtors' confirmed plan and concluded that the plan did not expressly put Ventura County on notice that its <u>in rem</u> rights were being affected. The BAP also found significant that the debtors did not bring an adversary proceeding seeking a declaratory judgment or partial lien avoidance limiting Ventura County's <u>in rem</u> rights, nor did the confirmed plan give notice that the debtors had any such intent. In re Brawders, 503 F.3d at 870.

In the present case, the IRS was not given adequate notice of Debtor's intent to modify the IRS lien. Debtor did not notice a motion for valuation of security pursuant to Fed.R.Bankr.P. 3012 with respect to the IRS lien. In pertinent part, Rule 3012 provides that the bankruptcy court "may determine the value of a claim secured by a lien in which the estate has an interest on motion of any party in interest and after a hearing on notice . . ." Fed.R.Bankr.P. 3012. The procedure for determining the value of security under Rule 3012 is set forth in the Northern District of California "Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 cases and Chapter 13 Cases," which instructs a debtor seeking such a determination to file a noticed motion in order to provide clear notice to the affected lienholder. Debtor followed the Guidelines and filed duly noticed motions to strip the liens of Amex and Midland, which were granted. Debtor, however, failed to follow the same procedure for the IRS lien.

Debtor contends that the Plan itself gave the IRS sufficient notice to comport with due process. In general, a bankruptcy plan can effectively determine value and/or avoid a lien, but only if the creditor receives clear notice that the plan will do so. See In re Shook, 278 B.R 815, 824 (9th Cir. BAP 2002). The Plan in this case, however, contained no explicit reference to the IRS lien. Nor did the Plan give any indication that the Real Property served as collateral for the IRS tax debt. Instead, the Plan listed the IRS as a secure claim holder with collateral valued at

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE: DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

8

$10,000, which was the value of Debtor's personal property.  Therefore, the Plan did not provide clear notice that Debtor intended to modify the IRS's lien rights against the Real Property.

Debtor's reliance on In re Talbot, 124 F.3d 1201 (10th Cir. 1997), is misplaced.  In Talbot, the chapter 13 plan clearly trifurcated the IRS's claim, and provided that the IRS would retain its lien only to the extent of its secured claim.  Specifically, the Talbot plan provided that "[e]ach allowed secured creditor shall receive the fair market value of the collateral held by said creditor as indicated below.  The balance of that claim due to said creditor shall become an unsecured claim . . . Each creditor shall retain its lien up to the fair market value of the collateral as determined by the Court."  Talbot, 124 F.3d at 1209.  The Plan in the instant case did not contain similar language limiting the value of liens.  Therefore, the IRS lien remained unaffected by the Plan and was enforceable to the full extent of the underlying unpaid tax assessment.

Nevertheless, Debtor appears to reason that a lien modification can be inferred because before Plan confirmation, the IRS filed a proof of claim asserting a secured claim for only $10,000 and an unsecured claim of $204,520.27.  Debtor contends that "[t]he form plan proposed to bifurcate the IRS claim and modify the lien, providing for payment of the secured claim of the IRS in the amount of $10,000 plus interest payable at 3%."  Debtor's Opening Brief, p. 3.  At most, however, the IRS's earlier filed proof of claim suggests that the Plan is ambiguous.  Ambiguities in a bankruptcy plan are interpreted against the debtor.  In re Brawders, 325 B.R. at 411; see also In re Jones, 420 B.R. 506, 516 (9th Cir. BAP 2009).

As a final argument, Debtor contends that the Bankruptcy Court necessarily valued the IRS's secured claim in the confirmation process in order to ensure that the Plan was feasible under 11 U.S.C. §1325, and that the valuation is binding, regardless of any change in the value of the collateral over the course of a chapter 13 case.  The argument is unpersuasive.  As the Bankruptcy Court noted, a lien and a claim are not equivalent or synonymous.  Memorandum Decision of Bankruptcy Court dated June 25, 2015, p.13, citing In re Work, 58 B.R. 868 (Bankr. D. Or. 1986).

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE:  DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

9

1  The Plan valued only the IRS's claim, not the lien.  The Plan provided for a secured claim based on the valuation of Debtor's personal property.  The Plan did not explicitly provide for the IRS's interest in Debtor's Real Property.

### V.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Bankruptcy Court's decision.  No later than September 14, 2017,  the IRS shall file and serve an appropriate proposed order and/or judgment to effectuate immediate transfer of the funds held by Debtor's counsel that remain owing to the IRS and to close this appeal.

**IT IS SO ORDERED.**

Dated:  September 7, 2017

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:15-CV-04122-EJD
ORDER AFFIRMING UNITED STATES BANKRUPTCY COURT MEMORANDUM DECISION RE:  DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT